IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


JACK DAVID WERESKI,
    Petitioner,

vs.                                     Case No. 3:08cv213/LAC/EMT

WALTER A. McNEIL,
    Respondent.
_____/

**REPORT AND RECOMMENDATION**

      Now pending is Respondent's motion to dismiss (Doc. 19) the instant petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (Doc. 1).  Respondent seeks dismissal of the petition on the basis that it was untimely filed pursuant to 28 U.S.C. § 2244(d).  Petitioner responded in opposition to the motion (Doc. 30).

      This matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(b).  After careful consideration, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter. It is further the opinion of the undersigned that the pleadings and attachments before the court show that the petition should be dismissed as untimely.

I.    BACKGROUND AND PROCEDURAL HISTORY

      The procedural background of this case is established by the state court record (Doc. 19, Exhibits).  On April 27, 2004, Petitioner entered a plea of nolo contendere in Escambia County Circuit Court case number 2003-CF-1148 to one count of DUI manslaughter, one count of DUI with serious bodily injury, two counts of aggravated assault on a law enforcement officer, one count of fleeing or attempting to elude a law enforcement officer, one count of battery on a law enforcement officer, one count of resisting an officer with violence, one count of felony possession of a controlled substance, one count of misdemeanor possession of cannabis, one count of misdemeanor DUI with damage to property or persons without serious injury, and one count of misdemeanor possession of an alcoholic beverage by a person under the age of 21 (Doc. 19, Ex. A).  On May 20, 2004, he was adjudicated guilty and sentenced to a total term of eighteen (18) years in prison (*id.*,

Exs. B, C). Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal (First DCA) (*id.*, Ex. D). On January 27, 2005, Petitioner filed a notice of voluntarily dismissal of the appeal, and on February 16, 2005, the First DCA issued an order dismissing the appeal (*id.*, Exs. E, F).

On February 21, 2006, Petitioner, through counsel, filed a motion for postconviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (*see* Doc. 19, Ex. G). On March 10, 2006, the trial court denied the motion (*id.*, Ex. H). Petitioner appealed the decision to the First DCA, and the appellate court affirmed per curiam without written opinion on August 25, 2006, with the mandate issuing September 12, 2006 (*id.*, Exs. L, M). Wereski v. State, 937 So. 2d 128 (Fla. 1st DCA Aug. 25, 2006) (Table).

On December 20, 2006, Petitioner filed a pro se petition with the First DCA alleging ineffective assistance of appellate counsel (*see* Doc. 19, Ex. N). The First DCA denied the petition on the merits on January 29, 2007 (*id.*, Ex. O). Wereski v. State, 947 So. 2d 1230 (Fla. 1st DCA Jan. 29, 2007)

On February 2, 2007, Petitioner filed a second Rule 3.850 motion (Doc. 19, Ex. P). The trial court dismissed the motion as successive on May 22, 2007 (*id.*, Ex. Q). Petitioner appealed the decision to the First DCA, and the appellate court affirmed per curiam without written opinion on February 15, 2008, with the mandate issuing March 4, 2008 (*id.*, Exs. T, U). Wereski v. State, 974 So. 2d 907 (Fla. 1st DCA Feb. 15, 2008) (Table).

Petitioner filed the instant federal habeas petition on May 2, 2008 (Doc. 1 at 19). He asserts the following grounds for relief:

> Ground 1: Petitioner's guilty plea was involuntary and in violation of due process of law due to counsel's misrepresentation and ineffectiveness.
>
> Ground 2: Defense counsel was prejudicially ineffective when he misadvised Defendant into taking a plea but failed to advise Defendant of the various defenses.

(Doc. 1 at 6–14).

II.   ANALYSIS

Pursuant to the requirements set forth in 28 U.S.C. § 2244, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L.No. 104-132, 110 Stat. 1214, which became effective on April 24, 1996, a one-year period of limitation applies to the filing of a habeas petition by a person in custody pursuant to a state court judgment. The limitation period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Section 2244(d)(1).

Petitioner contends that a government-created impediment to filing his federal petition existed, that is, defense counsel's dismissal of the direct appeal without Petitioner's knowledge or consent, delay in filing Petitioner's first Rule 3.850 motion, failure to send Petitioner the record on appeal of the postconviction proceeding, and delay in filing the appeal of the Rule 3.850 motion (*see* Doc. 1 at 17–18; Doc. 30 at 1).

To delay the running of the statute of limitations under § 2244(d)(1)(B), Petitioner must establish three elements: (1) action by the State, (2) that violated the Constitution or laws of the United States, and (3) that prevented Petitioner from filing his federal petition. 28 U.S.C. § 2244(d)(1)(B); Johnson v. Fla. Dep't of Corrections, 513 F.3d 1328, 1331–32 (11th Cir. 2008). In the instant case, Petitioner cannot satisfy the first prong of this standard because he admits that the conduct which allegedly prevented his timely filing was conduct of privately retained counsel, namely, Attorney R. Johnson (*see* Doc. 30 at 2). Therefore, Petitioner has failed to show that § 2244(d)(1)(B) is the appropriate statutory trigger for the limitations period. Additionally, neither of the claims raised in the instant petition are based on a newly recognized constitutional right, and Petitioner does not assert that the factual predicate for his claims could not have been discovered prior to the date his conviction became final; therefore, Petitioner has failed to show that § 2244(d)(1)(C) or (D) is the appropriate statutory trigger for the federal limitations period. This leaves § 2244(d)(1)(A), the date Petitioner's conviction became final, as the appropriate trigger for the federal limitations period.

The court must next determine the date Petitioner's conviction became final. The Supreme Court of the United States has held that "direct review cannot conclude for purposes of § 2244(d)(1)(A) until the availability of direct appeal to the state courts, and to th[e] [Supreme] Court [of the United States], has been exhausted." Jimenez v. Quarterman, --- U.S. ----, 129 S. Ct. 681, 685–86, 172 L. Ed. 2d 475 (2009). Accordingly, a state prisoner's conviction becomes "final" for purposes of § 2244(d)(1)(A) when the United States Supreme Court denies certiorari, issues a decision on the merits, or after the 90-day period in which to seek certiorari review expires.

Jimenez, *supra*; Nix v. Secretary for the Dep't of Corrections, 393 F.3d 1235, 1237 (11th Cir. 2004) (holding that a Florida prisoner's conviction became final 90 days after the Florida district court of appeal affirmed his conviction); Bond v. Moore, 309 F.3d 770, 774 (11th Cir. 2002) (holding that a Florida prisoner's conviction became final 90 days after the Supreme Court of Florida denied his motion for rehearing).[1] Although the Eleventh Circuit has held that a state prisoner is not entitled to seek certiorari review (and is therefore not entitled to the 90-day grace period) when he fails to seek review in the highest court of the state in which direct review could be had, *see* Pugh v. Smith, 465 F.3d 1295, 1298–99 (11th Cir. 2006),[2] the Eleventh Circuit has not addressed whether a state prisoner is entitled to petition for certiorari in the Supreme Court of the United States (and therefore entitled to the 90-day grace period) when he timely initiates a direct appeal in the state's highest court (in this case, the Florida First DCA), but his appeal is dismissed. The undersigned need not decide this issue in the instant case because even if Petitioner was accorded the benefit of the 90-day grace period, his petition is untimely.

Assuming, without deciding, that the federal limitations period began to run on May 18, 2005, after the 90-day grace period expired, the limitation period expired one year later, on May 18, 2006. Petitioner did not file his federal petition on or before May 18, 2006; however, he may be entitled to habeas review if the limitations period was tolled pursuant to statutory tolling principles. Section 2244(d)(2) provides:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

In the instant case, the record shows that Petitioner filed his first Rule 3.850 motion on February 21, 2006, after 279 days of the 365-day limitations period ran. That motion was pending until September 12, 2006, the date of the First DCA's mandate affirming the trial court's decision. *See* Nyland v. Moore, 216 F.3d 1264, 1267 (11th Cir. 2000) (where Florida petitioner appeals trial court's denial of post-conviction application, application remains pending until issuance of the mandate by the appellate court).

Petitioner filed his next postconviction application, the petition alleging ineffective assistance of appellate counsel, on December 20, 2006; however, this petition was filed after an

---

[1] The Supreme Court of the United States may grant a writ of certiorari to review the final judgment of "the highest court of a State in which a decision could be had." 28 U.S.C. § 1257(a); *see also* U.S. Sup. Ct. R. 13.1 (a petition for writ of certiorari may only be filed to review a judgment or order entered by a state court of last resort and must be filed within ninety (90) days of the action undertaken by such state court).

[2] In Pugh, the court held that the petitioner's state court convictions became final 10 days after the Georgia Court of Appeals affirmed the convictions, rather than 90 days after the affirmance, where the petitioner could have sought review during the 10-day period in the Georgia Supreme Court but did not, so that he was not entitled to seek review in the United States Supreme Court.

Case No.: 3:08cv213/LAC/EMT

additional 98 days of the federal limitations period ran, thus, it was filed after the one-year limitations period had already expired (279 days + 98 days = 377 days). Because that motion and Petitioner's subsequent post-conviction application were filed after the federal limitations period expired, they did not toll the limitations period. *See* Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000).

Petitioner next contends he is entitled to equitable tolling of the limitations period due to his counsel's delay in filing the first Rule 3.850 motion, delay in filing an appeal of the order denying that motion, and failure to send Petitioner the "records on appeal" (Doc. 30 at 2–5). "Equitable tolling can be applied to prevent the application of AEDPA's statutory deadline when 'extraordinary circumstances' have worked to prevent an otherwise diligent petitioner from timely filing his petition." Helton v. Sec'y for Dep't of Corr., 259 F.3d 1310, 1312 (11th Cir. 2001). However, equitable tolling is an extraordinary remedy that is applied sparingly; indeed, it is appropriate only "when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999); *see also* Wade v. Battle, 379 F.3d 1254, 1264–65 (11th Cir. 2004) (quoting Drew v. Dep't of Corr., 297 F.3d 1278, 1286 (11th Cir. 2002) and Sandvik, *supra*). "The focus of the inquiry regarding 'extraordinary circumstances' is 'on the circumstances surrounding the late filing of the habeas petition' and not on the circumstances of the underlying conviction, and whether the conduct of others prevented the petitioner from timely filing." Arthur v. Allen, 452 F.3d 1234, 1253 (11th Cir. 2006) (quoting Helton, 259 F.3d at 1314–15) (other citations omitted)). The burden of establishing entitlement to this extraordinary remedy rests with Petitioner. Wade, *supra*; Drew, *supra*.

It is well settled that attorney negligence is not a basis for equitable tolling. *See* Helton, 259 F.3d at 1313; Steed v. Head, 219 F.3d 1298, 1300 (11th Cir. 2000); Sandvik, 177 F.3d at 1271–72; *see also* Lawrence v. Florida, 549 U.S. 327, 336–37, 127 S.Ct. 1079, 166 L. Ed. 2d (2007) ("Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel."). However, the Eleventh Circuit recently held that an attorney's egregious misconduct may entitle a habeas petitioner to equitable tolling of the limitations period. *See* Downs v. McNeil, 520 F.3d 1311, 1319–25 (11th Cir. 2008). In Downs, the petitioner alleged that the following circumstances entitled him to equitable tolling: (1) he made unequivocal, repeated demands that his attorneys file his federal habeas petition, (2) he closely tracked his attorneys' work and the applicable federal deadlines, and (3) his counsel was repeatedly unresponsive and overtly deceived him by representing they had filed a tolling petition in state court when they had not in fact done so. *Id.* at 1316, 1322.

The Eleventh Circuit held that if these allegations were true, Downs was entitled to equitable tolling because (1) counsel's affirmative misrepresentation that a state tolling application had been filed, when it had not, constituted an extraordinary circumstance, (2) Downs acted with appropriate diligence by writing his attorneys three times during a five-month period to express concern over the running of the federal filing period and to urge the filing of a federal petition or state tolling application, and he either drafted a federal petition or a list of issues to be included in the petition, and (3) counsel's lie about having filed a state tolling application was not immediately discernable by Downs.[3]  *Id.* at 1323–24.  Therefore, the Eleventh Circuit vacated the district court's order dismissing Downs' federal petition as untimely and remanded for an evidentiary hearing to determine whether the facts alleged by Downs were true and, if true, what period of time should be equitably tolled.  *Id.* at 1325.  In holding that Downs sufficiently alleged extraordinary circumstances beyond his control, the Eleventh Circuit repeatedly and specifically noted counsel's affirmative misrepresentation as a critical factor.  *Id.*

Subsequently, in Holland v. Florida, 539 F.3d 1334, 1339 (11th Cir. 2008), the Eleventh Circuit declined to extend Downs to a "pure-professional-negligence" case.  The court noted that in the district court, Holland made no allegation of knowing or reckless factual misrepresentation or of lawyer dishonesty; instead, Holland's allegations were limited to his attorney's failure to communicate with him on the status of his case and attorney's failure to file a federal habeas petition timely, despite repeated instructions to do so.  *Id.*  The Eleventh Circuit assumed that the attorney's alleged conduct was negligent, even grossly negligent, but held that "in the absence of an allegation and proof of bad faith, dishonesty, divided loyalty, mental impairment or so forth on the lawyer's part," the facts did not rise to the level of egregious attorney misconduct that would entitle Holland to equitable tolling.  *Id.*

In the instant case, Petitioner describes the following conduct of Attorney Johnson as warranting equitable tolling:  (1) counsel's delay in filing the first Rule 3.850 motion, despite Petitioner's urging counsel to file it as quickly as possible to toll the federal limitations period, (2) counsel's permitting 28 days to elapse before filing a notice of appeal of the trial court's order denying the 3.850 motion, and (3) counsel's failure to send Petitioner the "records on appeal" (Doc. 1 at 17–18; Doc. 30 at 2–5).  Initially, although Petitioner states that Attorney Johnson delayed in filing the first Rule 3.850 motion despite Petitioner's urging him to file it as quickly as possible to

---

[3] In two recent unpublished decisions, the Eleventh Circuit reached similar conclusions.  *See* Kicklighter v. United States, No. 07-14945, 2008 WL 2421728 (11th Cir. June 17, 2008) (unpublished); Hammond v. Frazier, 275 Fed. Appx. 896 (11th Cir. 2008) (unpublished).  Both cases involved allegations of affirmative misrepresentations by counsel. Kicklighter, 2008 WL 2421728, at *1 (petitioner alleged that counsel "lied to him about whether the appeal had been filed"); Hammond v. Frazier, 2008 WL 1891478, at *1 (petitioner alleged that "post-conviction counsel falsely told him that counsel had filed the state habeas petition").

toll the federal limitations period, Petitioner does not allege that Attorney Johnson affirmatively misrepresented that the Rule 3.850 motion had been filed earlier than it had. In the absence of any allegation that counsel affirmatively misrepresented that the state pleading had been filed prior to February 21, 2006, Petitioner has failed to show that this circumstance rises to the level of egregious misconduct that would entitle him to equitable tolling under Downs.

Likewise, Petitioner has failed to show that Attorney Johnson's failure to send him the "records on appeal" entitle him to equitable tolling. Petitioner makes no allegation of knowing or reckless factual misrepresentation or of lawyer dishonesty; instead, his allegations are limited to his attorney's failure to send him a copy of the record of the postconviction appellate proceedings. In the absence of any allegation and proof of bad faith, dishonesty, or the like on counsel's part, the facts simply do not rise to the level of egregious attorney misconduct that would entitle Petitioner to equitable tolling. Furthermore, Petitioner does not allege that he made any effort to file his federal petition without a copy of the appellate record. Petitioner had nearly three months after the appellate court's mandate to file a timely federal petition. He knew the issues that had been raised in the Rule 3.850 proceeding (indeed, Petitioner states that the contents of the rule 3.850 motion were based upon his own research, not counsel's), and although he may not have had a copy of the trial court's order denying the motion, he knew that the motion had been denied by virtue of the fact that he appealed the trial court's decision; therefore, he had sufficient information to file at least a "bare bones" federal petition. Petitioner does not allege that he made any attempt to file a federal petition; therefore, he has failed to satisfy the due diligence requirement of the equitable tolling standard. *See, e.g.,* Paulcin v. McDonough, 259 Fed. Appx. 211, 213 (11th Cir. 2007) (transfer to county jail and denial of access to his legal papers and the law library did not constitute extraordinary circumstances, additionally, petitioner failed to allege how his inability to obtain legal materials thwarted his efforts to file a timely federal proceeding; therefore, equitable tolling of limitations period was not warranted); Bell v. Sec'y, Dept. of Corrections, 248 Fed. Appx. 101, 104–05 (11th Cir. 2007) (prisoner did not show diligence because there was no evidence that prisoner attempted to access the prison library or determine the applicable limitations period until after it expired); Miller v. Marr, 141 F.3d 976, 978 (10th Cir. 1998) ("Mr. Miller has provided no specificity regarding the alleged lack of access and the steps he took to diligently pursue his federal claims. . . . It is not enough to say that the Minnesota facility lacked all relevant statutes and case law or that the procedure to request specific material was inadequate.").

Finally, Petitioner has failed to show that Attorney Johnson's delay in filing the notice of appeal of the first Rule 3.850 motion had any causal effect on Petitioner's missing the federal deadline. The record shows that the appeal was not dismissed as untimely. Furthermore, as

previously discussed, the postconviction motion was deemed pending, for federal limitations purposes, from the date the motion was filed, February 21, 2006, until issuance of the First DCA's mandate affirming the lower court's decision on September 12, 2006. Therefore, counsel's delay in filing the notice of appeal had no effect on the running of the federal limitations period. Accordingly, Petitioner has failed to show he is entitled to equitable tolling of the limitations period.

Finally, to the extent Petitioner attempts to overcome the time bar by contending he is innocent of the charges, he has failed to make a sufficient showing of actual innocence. In Schlup v. Delo, 513 U.S. 298, 324, 326–27 (1995), the Supreme Court set forth the standard of proof governing a habeas petitioner's procedural claim of actual innocence: the petitioner must show that constitutional error "probably resulted" in the conviction of one who is actually innocent. "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

*Id.*

The Schlup Court went on to make several observations about this standard. With respect to the term "probably resulted," the Court clarified that, "[t]o establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.*, 513 U.S. at 327, 330 (emphasis added). With respect to the term "reasonable juror," the Court instructed: "It must be presumed that a reasonable juror would consider fairly all of the evidence presented. It must also be presumed that such a juror would conscientiously obey the instructions of the trial court requiring proof beyond a reasonable doubt." *Id.*, 513 U.S. at 329.

Additionally, it is important to note in this regard that "actual innocence" means factual innocence, not mere legal insufficiency. *See* Bousley v. United States, 523 U.S. 614, 623–24, 118 S. Ct. 1604, 1611–12, 140 L. Ed. 2d 828 (1998) (citing Sawyer v. Whitley, 505 U.S. 333, 339, 112 S. Ct. 2514, 2518–19, 120 L. Ed. 2d 269 (1992)). "[T]he district court should heed the Supreme Court's instruction that "[i]n cases where the State had forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." United States v. Montano, 398 F.3d 1276, 1285 (11th Cir. 2005) (quoting Bousley, 523 U.S. at 624).

In the instant case, Petitioner states the following in support of his claim of innocence: (1) he has always asserted his innocence and that he wished to go to trial, but he pleaded nolo contendere due to defense counsel's misrepresentations and ineffectiveness, (2) his blood alcohol

level was less than .08, and (3) conviction of some of the charges was precluded by double jeopardy principles (Doc. 1 at 8, 12–14). Initially, Petitioner's claims of misadvise and ineffective assistance of counsel during the plea process, as well as his double jeopardy arguments, relate to the legal sufficiency of his plea and some of the charges, not his factual innocence of the crimes; therefore, these allegations are insufficient to satisfy the Schlup standard. Additionally, Petitioner does not allege that the facts concerning his blood alcohol level were unknown to him at the time of his plea, and the state court record demonstrates that this information was available to him. The arrest report, which was incorporated into the plea agreement signed by Petitioner, included the fact that the results of the blood tests revealed .078 and .077 grams of Ethyl alcohol per 100 millimeters of blood (*see* Doc. 19, Ex. A at 28, Ex. H at 54–55), thus, this information was available to Petitioner at the time of his plea.[4] The information was also included in the pre-sentence investigation report which was available to Petitioner at the sentencing hearing, prior to the court's adjudicating him guilty and imposing sentence (*see* Doc. 19, Ex. B at 31–32, Ex. H at 54–55). Therefore, Petitioner has failed to support his allegations of actual innocence with new reliable evidence that was not available to him at the time of his plea and sentencing. Accordingly, he has failed to make a sufficient showing of actual innocence to overcome the time bar.

For the aforementioned reasons, it is respectfully **RECOMMENDED**:

1. That Respondent's motion to dismiss (Doc. 19) be **GRANTED**.
2. That the petition for writ of habeas corpus (Doc. 1) be **DISMISSED** with prejudice as untimely.

At Pensacola, Florida, this 24th day of March 2009.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit**

---

[4]The arrest report also indicates that the results of the blood test showed the presence of Alprazolam in Petitioner's system, which is a controlled substance under Florida law (*see* Doc. 19, Ex. H at 55). Fla. Stat. § 893.03(4)(a).

Case No.: 3:08cv213/LAC/EMT

**the scope of appellate review of factual findings.**  *See* **28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**